## FREDERICK E. WEBER *vs.* EDGAR R. VERNON.

*Case—Distress—Attachment—Rent—Landlord and Tenant—Reasonable Care—Malice—Damages—Exemplary Damages.*

1. A distress will lie for rent in arrears without any prior demand of payment. It may be made by the landlord personally, or by his bailiff—who is not required to be a public officer—but if he is, the landlord is responsible for his acts as though he were a private person.

2. The property distrained may remain on the premises, or be impounded there, or elsewhere in the county.

3. If a reasonable distress is made in a lawful manner it is a lawful act, and malice will not make the defendant liable for a malicious distress.

4. An unreasonable distress is such that a reasonable man—taking into consideration a sale of the property—would know to be materially more than enough to satisfy the rent and expenses.

5. If the distress is unreasonable and without malice, the measure of damage is the loss sustained; but if unreasonable and malicious, exemplary damages may be recovered.

6. A person holding goods as a distress must use such care as a prudent man would use with regard to his own property of like character. The care to be used when the property consists of cattle, horses, milch cows, etc. As a general rule, the party holding goods distrained has no right to use them for his own benefit. If the property is injured while in his custody, the burden is on him to rebut the presumption of negligence.

7. There can be no distraint for rent until it is due. The landlord's remedy as to rent not yet due is under the statute which provides for an attachment.

8. If the attachment is taken without probable cause, it is unlawful, and the plaintiff is entitled to recover for loss of the use of the property, etc. The party taking the attachment must, on good grounds, have believed, that the tenant had intended to remove his effects, etc. If he did believe it, and had good grounds for believing it, the attachment was lawful, no matter what his motives may have been; *good grounds* would be such as would justify a reasonable man in such belief.

9. If the attachment was both unlawful and malicious, the plaintiff might recover exemplary damages; and malice could be inferred from the want of good or probable cause to believe the allegations of the affidavit.

*(December 11, 1899.)*

LORE, C. J., and SPRUANCE and GRUBB, J. J., sitting.

*William F. Kurtz* for plaintiff.

*Julian C. Walker* and *Sylvester D. Townsend* for defendant.

Superior Court, New Castle County, Nov. Term, 1899.

ACTION ON THE CASE (No. 128, May Term, 1899).

SPRUANCE, J., charging the jury :

Gentlemen of the jury :—This action is brought to recover damages for maliciously taking an unreasonable distress for rent in arrear; for the loss of the use of and injury to certain property distrained for rent; for the use of certain property distrained for rent, whereby the same was injured ; for using and disposing of the milk of certain cows distrained for rent ; and for maliciously, and without reasonable or probable cause, suing out and prosecuting an attachment for rent growing due, and seizing and attaching certain property thereunder.

A distress will lie for rent in arrear without any prior demand of payment. The distraint may be made by the landlord personally or by his baliff—who is not required to be a public officer, and if he is a public officer, he is to be regarded in the same manner as if he was a private person, and the landlord is responsible for his acts in the course of his employment.

The landlord or bailiff making the distress may suffer the property distrained to remain at large on the premises or may impound it on the premises or in any other convenient place in the same county.

If a reasonable distress is made in a lawful manner for rent in arrear—it is a lawful act, and however malicious may have been the motive or feelings of the defendant toward the plaintiff, he is not liable in an action for making a malicious distress.

*Wells vs Parsons, 3 Harr., 507.*

A statute of this State provides that "any person taking an unreasonable distress, shall answer in damages to the party injured, to be recovered in an action on the case."

*Rev. Code, 869, Sec. 24.*

Whether the distress is or is not unreasonable does not depend upon whether the person taking the distress was or was not an experienced person, or whether he did or did not act in good faith, or to the best of his judgment, but whether the goods taken were or were not a reasonable amount to satisfy the rent and expenses—taking into consideration the price they might be reasonably expected to bring at a public sale for cash by a constable or sheriff,—the officers designated by law to sell the same at public sale.

Nor does the law hold the party making the distress to such exactness as to be liable in case there is any small excess in the value of the goods beyond the amount needed to satisfy the rent and expenses.

An unreasonable distress is such that a reasonable and fairly intelligent man—taking into considiration the mode of sale (if the goods should come to sale) would know to be materially more than enough to satisfy the rent and expenses, and such excess should be of a substantial and not a trifling character.

If the distress was unreasonable in amount and made without malice, on the part of the defendant, the plaintiff is entitled to recover such damage as he has sustained by reason of the taking of such unreasonable distraint.

If the distress was unreasonable in amount and such unreasonable amount was taken maliciously by the defendant, with intent to harrass, oppress and injure the plaintiff, then the plaintiff may recover such exemplary damages as the jury, under all the circumstances of the case, may deem just and reasonable.

A person taking and holding goods as a distress is bound to use such reasonable care as a prudent and reasonable man would use in regard to his own property of like character. If the property be cattle and horses they should be fed and watered and

be given such attention as may be required to keep them in as good condition as when distrained—but the person taking and holding goods distrained is not bound to exercise extraordinary care of them.

If milch cows be distrained they should be milked—as without this they would suffer and be injured.

If the person holding cows so distrained uses or sells the milk he is liable for its value, less the cost and value of the milking, keeping, feeding and care of the animals.

As a general rule a person taking or holding goods distrained has no right to use them for his own benefit, but in case a horse and wagon are lawfully distrained, he may harness the horse to the wagon for the purpose of their removal to the place where they are to be impounded, and if during such removal the wagon is broken or damaged without negligence on the part of the landlord, or his baliff or agent, and while in the exercise of due and reasonble care, he is not liable for such damage—but if such damage be occasioned by the negligent conduct of the landlord or his bailiff or agent he is liable for such damage.

Where the property distrained is injured or damaged while in the custody of the landlord or his bailiff or his agent, the burden is on him to rebut the presumption of negligence, but the jury are to judge and determine from the evidence whether such injury or damage was occasioned by the negligence of the landlord, his bailiff or agent. There can be no distraint for rent until it is due. The landlord's remedy as to rent not yet due is under the statute of this State which provides:

" Upon affidavit made by a landlord, or any credible person for him, and filed in the office of the prothonotary, (or any Justice of the Peace), of the county where the demised premises are situated, stating the rent which his tenant is to pay or render, and when it will be due, and that he does on good grounds believe that the tenant intends to remove his effects from the county, or otherwise dispose of the same, and will so remove or dispose of the

same before the rent becomes due so as to defeat a distress for said rent, a writ of attachment shall be issued."

* * * "If the tenant shall give to the landlord bond with sufficient surety, to be approved by the officer serving the writ, before the return thereof, or by the Court at the time of the return, or by the Justice of the Peace, when the same shall be returned to his office, to pay the rent when due, with the costs of the attachment, the goods and garnishees shall be discharged."

*Rev. Code, 873, Secs. 52 and 53.*

A tenant whose property has been so attached may apply for relief to the Superior Court in term time or to a Judge in vacation —and if the Court or Judge consider that there was not sufficient ground for the attachment the property will be discharged—*16 Del. Laws, Ch. 532.*

Notwithstanding the right of the tenant to have his goods discharged by these methods, he has the right to recover damages against the attaching creditor, if the attachment was unlawfully taken—that is without probable cause—and in such case the plaintiff would be entitled to recover for the loss of the use of the property while held under the attachment.

To justify the defendant in taking the attachment it is not necessary that the jury be satisfied from the evidence that the plaintiff then did actually intend to remove his effects from the county, or otherwise dispose of the same, and would, (but for the attachment) so remove or dispose of the same before the rent became due, so as to defeat a distress for said rent—but to justify the defendant in taking the attachment the jury should be satisfied from the evidence that the defendant, at the time he made the affidavit on which the attachment was issued did, on good ground believe that "the tenant intends to remove his effects from the county, or otherwise dispose of the same, and will so remove or dispose of the same before the rent becomes due."

The jury should inquire and determine from the evidence whether the defendant did believe what he stated in his affidavit—

and if he did so, whether he had good grounds for so believing. If your answer should be in the affirmative as to both these inquiries, then the issuing of the attachment was lawful, and it is of no consequence what may have been the motives or feelings of the defendant toward the plaintiff in taking the attachment.

*Good grounds* for believing the statements contained in the affidavit would be such grounds as would justify a reasonable and fair minded man in such belief—and of these you are the judges. If the defendant did so believe, and on good grounds,—the attachment would be lawful even if he was mistaken in such belief.

If however, the defendant did not believe the said statements of his affidavit—or had not good grounds for so believing—the attachment was unlawful and the plaintiff is entitled to recover such damages as he has sustained from the taking and detaing his goods under the attachment.

But if the attachment was not only unlawful, but was taken maliciously and for the purpose of harrassing and oppressing the plaintiff, he would be entitled to such exemplary damages as you deem proper.

If the defendant had no such good or probable cause to believe the said allegations of his affidavit, the jury may infer malice from the want of such probable cause.

Your verdict should be for the party in whose favor is the preponderance of the evidence, as to the credibility and weight of which you are the sole judges.

Verdict for plaintiff for $66.77.